John R. Rhein v. John Coffman Mr. DeBorgia. Thank you, Your Honors, and may it please the Court. Your Honors, it's fairly black-letter law that in order to comply with due process, there must be a prompt hearing and it must be meaningful. It also must be state-initiated. Per Loudermill, a pretty well-established law, there must be some kind of hearing. There must be something, some sort of due process. Matthews is obviously a very well-established law and that three-part balancing test is not that difficult. Let me tell you what my principal problem is. I'm not sure what role Mr. Coffman plays in the timing of the hearing. If I understand the state procedure correctly, he's not the one who gives the hearing. He couldn't be the one who gives the hearing. That has to be a neutral. So what role does Coffman play? Well, Coffman's role is essentially that of the, I would say for lack of a better analogy, a prosecutor. He's the one who takes away the property. He started the proceeding. That's fine. Your challenge in the district court that he couldn't make a summary decision has been abandoned, as I understand it. Well, I'm trying to figure out what role he plays in the hearing. If your client is indicted, for example, and the district court doesn't hold a speedy trial, you don't sue the prosecutor. But that's what's happened here. If you think Coffman is the prosecutor, you have a complaint that a tribunal has not provided an adequately timely hearing and you've sued the prosecutor, which you can see my problem. Well, what I was going to add, too, with the prosecutor analogy is without the absolute immunity issues that prosecutors have, because you could certainly sue prosecutors. You could sue, but you couldn't win. Well, I guess it would depend on the facts of the case. The person responsible for the hearing, for the timing of the hearing, is the person responsible for scheduling the hearing. Is it your contention that Coffman prevented whoever was responsible for holding the hearing from holding a hearing? Absolutely. Now, what's your theory about how he did that? The way he did it was by sending off a letter and initiating that process, he himself did not initiate the process. He did not provide a hearing. Prosecutors don't initiate, don't light fires under district judges. Is there some rule in Illinois administrative practice that no hearing is held until somebody in Coffman's position says so? Yes, Your Honor. Okay, where do I look to find that rule? In my reply brief, I talk about the administrative law. I don't have the exact page, but in my reply brief, I do go through the administrative law. The reason I'm asking this is I didn't find satisfactory what was in the briefs. I'll be asking this question to your adversary, too. Is there some rule in administrative law that gives Coffman control over the timing of the hearing? Yes, Your Honor. I mean, the way that I read the administrative codes is it says whatever the person who's taking away the property deems to be appropriate must be complied with before the process is to begin. And that's where Mr. Coffman's role is so critical here because when he says, okay, here are the three things that should be complied with, he doesn't say must. He sent a letter saying it will help your case if you submit these three things. But the question I'm asking you is what, if anything, gives Coffman control over the timing of the hearing? If your client had sent a letter back saying I don't have these three things, I want my hearing now, could Coffman have prevented it? Could he have prevented it? Yes. Yes, because that's exactly what he did in this case. What did he do concretely that prevented a hearing? Because from the plaintiff's perspective, he is told to send this document to begin the hearing. Think back to the criminal case again. Prosecutor brings an indictment and says if you want to be acquitted, you should do three things. And the defendant then goes to the judge and says, piffle, I want my trial. The prosecutor can't stop the trial. I'm trying to figure out what in Illinois procedure gives Coffman control over the timing of the hearing. And presumably that must mean that somebody can ask for a hearing and Coffman can say, no, you can't have a hearing until X. Where is that in Illinois law? That's what I'm trying to get at. Well, Illinois law gives discretion to those people like Mr. Coffman. And what Mr. Coffman did was when he did, I'll just fast forward to the part where he did receive the paperwork, the psychiatrist report, etc. He did nothing. He absolutely ignored that evidence and that prevented. Fine. You're not answering my question. You're saying Coffman, when the evidence came in, Coffman just sat around. But if Coffman isn't the one who gives the hearing or controls the timing of the hearing, who cares whether Coffman sat around? Well, because Coffman sent a letter saying, give this to me and then I will send it to the legal unit. Coffman himself put himself between the legal unit, which starts the process of the hearing. So is there some rule in Illinois law that the legal unit won't provide a hearing until the initiator has done something? No, it gives the discretion to the initiator, and that's why the initiator can be sued. And where do I go to find the proposition that the legal unit won't give a hearing until the initiator says so?  No, no, no. Where do I go? I'm not interested in your testimony. I'm interested in where I go to find the rule that you're challenging in this case, that you have to be challenging in this case. I'm not challenging the rule. There is no rule that says the legal unit cannot review this. Eventually they are going to be the ones who start that review process. The problem is there's no way a person who is denied due process would ever know about the existence of the legal unit. Because all they're asked to do, or told to do actually, is send the letter and the information requested by the person in Coffman's position to Coffman. Are you making an argument that the Constitution requires the state to give individual notice of what the procedure is for getting a hearing? That's at least a plausible argument. And then you would have to show, in order to show liability to Coffman, that Coffman is the one who had to give that notice, as opposed to somebody else. But I didn't understand your brief to be making that argument. No, I'm not making that argument, frankly, because when Coffman did not just hide the fact, he actively hijacked the process. He never said, you should go to the legal unit. Now we're back to the notice question. Normally one assumes that people can find out the law for themselves. Sometimes they'll have to do extreme things, like hiring lawyers to find out the law. And then they make their claims for a hearing. I'm interested in an argument if Coffman prevented that from happening. If he was the one who was supposed to give that notice, if there was an entitlement to a notice, and he didn't do it, then there's a problem. But if either no one is required to give a notice, leaving people to go hire lawyers, or if instead somebody else was supposed to give a notice, again, I'm wondering what's the problem for Coffman? Well, I mean, you could frame it as a matter of notice. Yeah, but you haven't. That's fine, because, well, Your Honor, the notice issue is that the law doesn't say you have to go to the legal unit. So there would be nothing to put them on notice for. There is no process whereby you have to go to the legal unit, or you can go to the legal unit. This is all discretionary. The administrative code and the statutes say nothing about where you're supposed to go to get your hearing or document reviewed. Coffman took it upon himself to say, give it to me. I will be the person who gives you the hearing. I will be the person who gives you the document reviewed. He can't be the person who gives the hearing. He's the person who will— That would be blatantly unconstitutional. He's the person who will— And I take it in Illinois practice, he is not the person who gives the hearing. I'll rephrase it. He took it upon himself to say, I will be the person who will start the process to get you a hearing. He said, send it to me. He didn't say send it to the legal unit. No lawyer, no judge, no anyone could ever know that this eventually will be heard by the legal unit. So I think that's the process we have here. And I think that's the qualified immunity issue as well, to fast forward a bit on this. Because what the district court did, and I don't believe the defendants here are defending the district court, is they looked at it as a matter of just timing. Well, there's lots of cases where timing was longer than this, and therefore it's qualified immunity. Well, the problem with that is, for example, there's a 15-day case, Berry, where they said 15 days was too long. And you have a nine-month case, Loudermill, that said it was too short. But what really matters, and this is the Tavares case out of the Seventh Circuit where 30 days was too much, is what happened during that time period. What process was given? So, for example, in Loudermill, the reason it took nine months is because he had tons of due process. He had numerous hearings, he had lawyers, he had administrative review, he had court review, and that all took nine months. And that makes sense. That shows he received a lot of due process. Whereas here, the length was very long, longer than Loudermill, and nothing happened. So in terms of the period that you are claiming, the amount of delay that violated due process, are we talking about the six months prior to Kaufman's transfer is your argument, as I understand your argument, is your argument that Kaufman remains responsible even after he was transferred out by some, as I understand, theory of proximate cause? Yes, Your Honor. My argument is at a bare minimum it's six months, because that's when he received the letters, he received the letter from the lawyer, he received materials that he himself requested, and then February is when he leaves the unit. So at a bare minimum. So what action, inaction, or responsibility did he have after he left the unit in February 2012? Well, that's the proximate cause argument. So, in other words, when you essentially, and I analogize it to a DMV. It almost goes all the way back to the Falls Graph case that we all kind of studied. It is sort of a Falls Graph case, yes, Your Honor. I mean, if you're at the DMV and there's a line, it's 9 o'clock, the person takes a coffee break the minute they come into work, all of a sudden it's 10 o'clock and that line's out the door, well, guess what? The person who took the break for an hour caused that line to grow, caused the delay, and yet they are responsible for those actions that happened after 10 o'clock when they did begin to work, or if a different clerk began to work. So, yes, there is this proximate cause issue that I think the Seventh Circuit has dealt with, this Court has dealt with, and they analogize it, I believe, in one case to a plumber. You do defaulty plumbing and five years later it explodes. Guess what? You're at fault, even though that plumbing occurred five years early. But in the plumbing situation, there's no other plumber that comes in and does work in the interim. But if that one plumber did, he would not be the one who would be responsible for it. It would be the first person who caused it in the first place. So, I mean, I guess this begs the question, is if Kaufman is not responsible for this, are we just to say that nobody is responsible for this? Nobody was responsible for giving this man a hearing? I mean, it cannot possibly be. No, one possibility, the possibility I've initially raised, is you simply sued the wrong person. You need to find out who is responsible under Illinois practice for providing a timely hearing, and then if that person didn't, then you know who the right defendant is. But you don't sue the person who initiated the process for failing to provide some later step in the process. Your Honor, there is no person to sue that. That person doesn't exist. We know that there is a unit that provides hearings. But unless they are given the materials. They don't know Mr. Ryan exists. They don't know Mr. Ryan exists because Mr. Kaufman has stepped in between that board and Mr. Ryan. Mr. Ryan would never know about the existence of a legal unit which is within the same department. Well, we're now back to the claim, to the potential claim, that there was a constitutional duty to notify him about what the process is and who gets the request. But as I said, I don't understand you to be making that contention. Am I wrong? You are not wrong. I do think that it can be subsumed within the complaint itself. Amended complaints can be filed even after oral argument, even after decisions. And I guess if that's the theory that Your Honor would be fine most. You don't get to file a complaint after oral argument in the Court of Appeals. That's not the way the process works. Well, Your Honor, I disagree that there is a person out there that we can sue. Because Mr. Kaufman is the person. Thank you, Counsel. Okay. Thank you, Judge. Mr. Bezea. May it please the Court, my name is Frank Bezea and I represent the defendant, Lieutenant John Kaufman. Well, I hope you can see where my initial question is going to be. What is the process in Illinois and how do we tell? Or how would a lawyer tell what the process is? I'll go right there, Your Honor. The appeal process was found in 20 Illinois Administrative Code Section 123070. And these regulations which existed at the time, and it has since been amended. So there's a little bit of confusion in the reply brief where Ryan points to the regulations as they currently exist. But those were amended at December 31, 2013. So as they existed at the time these events took place. Does the record have the set of regulations as they existed at the time of these events? I don't believe they're in the record themselves, but they're cited in the brief and they're available. So I know the current Administrative Code is online. Are earlier versions of the Administrative Code available online? Yes. I mean, if you look at the citation. We can be able to track this down. Yes. The citation to the regulations in Lieutenant Kaufman's brief includes a citation to the pages in the Illinois Register and the volume where the amendment took place. And so that contains both the old version and the new. And under the old version, there's essentially kind of almost a two-track way of reviewing. I worry when lawyers say essentially, comma, kind of. I'm interested in knowing what it says. Yes. Kind of. So what it says is that the petitioner initiates the process by notifying the state police that he wants a review of the revocation, in this case under Section 8F. At that point, that initiates a document review process. Under the document review process, the state police reviews the documents that are sent in and the director, who ultimately makes the decision of whether or not to grant the relief that's requested, the director can grant the relief based off those documents, and then there's no need for an in-person evidentiary hearing at all. And due process doesn't require an in-person hearing, only if there's a dispute as to an issue of material fact. Mr. Dvorak's argument, as I understand it, is that Mr. Kaufman was a bottleneck. This procedure could not go forward until Kaufman said so. Correct. You're describing something different. Right. Well, I'm describing the document review, which is where relief can be granted without a hearing. But you can also request. I'm trying to get people to talk about the hearing. The in-person hearing. Okay. How does one get a hearing, and is Kaufman a bottleneck? No, Your Honor. You can request a hearing. How does one get a hearing? No, Your Honor. I'm a little worried. No, Your Honor. He's not a bottleneck. Sorry. Yes, he does get a hearing. Under Section F, it provides that the director doesn't provide relief as a result of this document review process. The petitioner may petition for a hearing. And, in fact, that's what happened here in the January letter. Ryan specifically asked for a hearing, and at that point, Lieutenant Kaufman notified the law department of the request, and Lieutenant Kaufman, the only evidence in the record is Lieutenant Kaufman's testimony that every person who does request an in-person hearing would get one eventually. Here, there was no reason to ever get to an in-person hearing because the state police granted Ryan the relief he was seeking. Counsel, between August and January, what was going on with the process, and the people or the board or whoever is responsible for ultimately granting the hearing, were they even aware of the claim between August and January? Between August and January, the Firearm Services Bureau received the request. Then they sent out information requests to the state police zone that had initially requested the revocation and Representative DeLuca's office to gather more information to see if it could be resolved as simply a matter of document review. At that point, the evidence doesn't suggest that the matter had been forwarded on to the law department yet because the document review process hadn't been completed. So the law department wasn't involved between August and January. Correct. And actually, truthfully, nothing was really done between August and January other than send out a request to the representative's office for information. Right. It was put in the files process. Information requests were sent out. They were waiting for responses. And that's really the only evidence in the record on what happened during that period of time. And it was Ryan's burden as the plaintiff, if he's arguing that Lieutenant Coffman or the state police completely ignored his letter, to present evidence to show that. But there's no evidence from any of the other people who worked at the Firearm Services Bureau who would have sent out the request to Lieutenant Coffman named in his deposition testimony. There's no evidence from the police zone who would have received these information requests or from Representative DeLuca's office. So to the extent that the record is bare on what did or did not happen during that six-month period, it was plaintiff's burden to present evidence to establish every part of his claim and ultimately to overcome the qualified immunity defense. And in his attempt to overcome the qualified immunity defense, he doesn't cite to any clearly established precedent that's closely analogous to this case that would establish at what period of time must review be conducted in order to comply with due process. Instead, he argues that you don't even have to look at the actual amount of time, and he doesn't need to present any closely analogous cases because the constitutional violation is obvious, and he says you only look at the justifications or explanations that are provided by the defendant. But that's not the law. The due process right is a right to a hearing at a meaningful time. Well, the briefs haven't gone over what seem to me plausible alternatives. Most of the police come in and seize weapons with a search warrant, and there's then a request made for their return, and this is in federal court, under Rule of Criminal Procedure 41, saying it's improper for the government to hold these. I'm entitled to them back. Are there any cases about how long such a hearing can take, how long it's proper to wait before holding such a hearing? I'm not aware of those. That seems the closest analog because it involves actual firearm seizures and a request for return. One would want to go there, and I was disappointed. Neither side's brief goes there. Now, maybe if you do go there, you find nothing there, and that's not your fault, and there's nothing there, there's nothing there. But it would sure help to have started at that closest analog because I think that's the closest I can think of. Yes, sir, there would be one analog, but here there is no clearly established law or no law clearly establishing, at least it hasn't been. Maybe it just hasn't been found. I guess that's possible, Your Honor. But on what's important is to point out that the analysis that Ryan is suggesting that this court undertake, where you don't look at the period of time at all and only look at the justifications has a couple of fundamental flaws, and the first of which is it's based on this premise that there must be, that there's a due process right to immediate review because otherwise the first question that you would ask in analyzing this is, well, what's the allowable period of time? Then you would ask, was that period of time complied with in this case? And then, if not, is there a specific justification for why in this particular case it didn't fall within that period of time? But to argue that Lieutenant Kaufman or the state needs to justify every day that goes by overlooks the fact that there has to be some sort of baseline period of time in which review may occur consistent with the Constitution. Yeah, well, it's not clear how far that gets you. If you don't know or if there aren't any cases involving firearms, one might want to turn to the First Amendment. And the First Amendment, if somebody is trying to prevent speech, requires a very fast hearing. We're talking less than ten days, right? And certainly Illinois is not in the business or has not been offering hearings in ten days or less. No, Your Honor. Well, and what you would do is, in order to define what that baseline period of time is, you would look at closely analyzed cases and you would also go through the... Well, so I've now got two analogies. In one analogy, the First Amendment speech analogy, Illinois is a clear loser because it's taking much more time than that, though maybe Kaufman isn't the responsible person. The other one, the Fourth Amendment analogy involving guns, we just don't know what's going on. That doesn't help the state much either. Well, the cases that are cited, and it is Brian's burden to establish that it's been a clearly established time period. And Loudermill, for example, would suggest that here a six-month period is perfectly fine because in Loudermill you had a nine-month period of time, which the court found to not violate due process. And within that nine-month period of time, there was a six-month span from when the initial evidentiary hearing was conducted until there were arguments before the ultimate decision maker. And if that six-month period was allowable in Loudermill, it stands to reason that a six-month period here when you're dealing with a gun license would also satisfy due process. And at the very least, it falls short of establishing that there was a clear right to a hearing that occurred in less than six months. And in addition to the absence of any existing precedent, or I guess I'll actually very briefly address the Tavares case and the Berry case, the other two cases that Ryan relies on. The Berry case is readily distinguishable because there, even though the period of time was relatively short, the court found that the ultimate hearing was meaningless because by the time it occurred, the underlying suspension had already been served, so there would have been no point in holding a hearing because nothing could have been done on the initial sanction. And in Tavares, you had a much more serious injury than you do here because the plaintiffs could not get into their place of business, and so they had lost their ability to maintain a livelihood, and there were compounding and exacerbating injuries as time went on. As they owned a grocery store and the damages to the building worsened as time went on, they lost their ability to gain an income going forward because they were losing customers and their ability to maintain customers in the future. You said, if I recall correctly, I haven't checked these cases, that when an automobile is seized, there needs to be a pretty prompt hearing on a request for its return, not because that deprives you of a livelihood, but because the alternative, perhaps unspeakably bad in Chicago, is taking tabs. Well, part of it, I think, is the livelihood, Your Honor, is that a lot of people rely on their automobiles. No, that's not the grounds on which we decided that case. This was maybe five years ago. I should have looked that up before this argument. But we required a pretty prompt hearing for automobiles, and there's no constitutional protection for automobiles as there is for weapons. Well, and there's also, though, a stronger government interest here in gathering information because what the state police and the director of the state police ultimately must decide. That's a different problem. If it takes too long to gather information and the gun owner demands a prompt hearing, that may just be a prompt loss because then you still have only the information that led to the initial summary revocation. If he demands an immediate hearing, yes, Your Honor. So people are entitled to injure their interests by asking for governmental action too quick. Correct, Your Honor. But here there was no request for an in-person hearing. And I just want to make sure I'm clear on what the regs were, the old regs and the new regs, with respect to the request for a hearing because there's nothing in either of the regs that says you have to go to someone like Kaufman in order to proceed to a hearing, right? Correct, Your Honor. I just want to get to that. That is kind of the bottom line for me. So there was nothing that prevented him from requesting a hearing when all this delay was going on. Correct, Your Honor. Had he requested a hearing, then what Lieutenant Kaufman would have done is what he did when he did actually request a hearing. He passed the information on to the legal department and then things could have progressed from there. So there was no bar or no magic switch he had to hit in order to go to the hearing. Correct, Your Honor, just to ask for a hearing. And although Ryan argues that he was prevented from seeking any review, the document review process began once the Firearms Services Bureau received this information, and he received the relief he requested even though he never provided all the information that was listed in the replication letter. So clearly that was not a bar or any condition on his obtaining a document review,  And then the bottom line on qualified immunity is, in terms of this time period, we really don't have any clearly established law on how long a period there needs to be for gun owners' rights to be restored in order to get the guns back. I mean, that's just the bottom line in terms of I haven't found any. I mean, there are some cases that touch on this, but that's really not very clear. Right, there are no closely analogous cases setting whatever that baseline period of time is. And so the other option that Ryan has to defeat qualified immunity is to point to cases outside the circuit that establish a robust consensus of persuasive authority, and there he only relies on a single case from the Second Circuit, which doesn't provide any robust consensus. And in addition, because that's readily distinguishable, because there the underlying interest was the ability to obtain a livelihood, in that case the plaintiff was also prevented from presenting any evidence to the administration until after the investigation was over. So that case doesn't satisfy qualified immunity either. And unless your honors have any further questions, I would ask that you affirm summary judgment. Thank you. Thank you very much. The case is taken under advisement.